IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
|     Plaintiff-Respondent, | § | |
| | § | |
| v. | § | Cr. No. C-08-571-1 |
| | § | (Ca. No. C-12-404) |
| ENRIQUE ZAMORANO, JR., | § | |
| | § | |
|     Defendant-Movant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Enrique Zamorano, Jr.'s ("Zamorano") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, along with his Memorandum of Law in support. D.E. 115, 116.[1] The government filed a combined response and motion to dismiss. D.E. 128. Zamorano did not file a reply.

### I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### II.  FACTS AND PROCEEDINGS

Zamorano was indicted in August 2008 for conspiracy to possess with intent to distribute more than five kilograms of cocaine and more than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C) and for making a false statement to obtain a federal loan in violation of 18 U.S.C. § 1014. D.E. 1. The indictment was sealed. D.E. 4. A second indictment was returned against Zamorano and his wife, whereby Zamorano's wife was also charged with making a false statement. D.E. 10.

---

[1] Docket entry references are to the criminal case.

Zamorano was arrested more than two years later and made his initial appearance in federal court in McAllen, Texas. Minute Entry Dec. 17, 2010. Zamorano was appointed counsel. D.E. 52. He retained counsel before his detention hearing. Minute Entry, Dec. 22, 2010, D.E. 56. Zamorano was arraigned in January 2011. Minute Entry, Jan. 3, 2011.

A superseding indictment was returned on April 6, 2011, whereby Zamorano was charged with the same two original charges along with six additional counts. D.E. 78. Count Three charged Zamorano with a second false statement regarding a loan. The remaining counts charged him with procuring firearms in violation of federal firearms laws, 18 U.S.C. §§ 2, 922(a)(6), 924(a)(2). Id. He was arraigned on the superseding indictment. Minute Entry, April 11, 2011.

Zamorano pled guilty to Count One pursuant to a plea agreement. D.E. 91. In exchange for Zamorano's guilty plea to count one and his waiver of his right to appeal or otherwise collaterally attack his sentence, the government agreed to dismiss Counts Two through Eight, recommend that he receive maximum credit for acceptance of responsibility, and recommend a sentence at the lowest end of the applicable guideline range. D.E. 91 at ¶¶ 1-2, 7. The plea agreement described Zamorano's waivers of appeal and to file a motion pursuant to 28 U.S.C. § 2255 as follows:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. The Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that 28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

Id. at ¶ 7 (emphasis in original). Zamorano and his counsel signed the agreement. Id. at p. 5.

At rearraignment, the Court questioned Zamorano about the indictment. Zamorano testified that he read it, discussed it with counsel, and understood the charges against him.[2] He was satisfied with counsel's representation. <u>Id.</u> Next, the Court questioned Zamorano to ensure that his plea was voluntary and knowing:

> 14 But the first question concerning these
> 15 Plea Agreements is: Did you sign your agreement
> 16 voluntarily?
>               *       *       *.
> 19 THE COURT: How about you, Mr. Zamorano?
> 20 DEFENDANT ZAMARANO: Yes, sir.
>               *       *       *
> 3 THE COURT: All right. Mr. Zamorano, did your
> 4 attorney, Mr. Quintana, read your agreement to you?
> 5 DEFENDANT ZAMARANO: Yes, sir.
> 6 THE COURT: And do you feel like you understand
> 7 the terms of it?
> 8 DEFENDANT ZAMARANO: Yes, sir.
>               *       *       *
> 13 THE COURT: Mr. Zamorano, anyone make any type
> 14 of offer or promise to you to get you to plead guilty
> 15 other than those contained in the agreement?
> 16 DEFENDANT ZAMARANO: No, sir.

<u>Id.</u> at 8-9.

The Court next questioned Zamorano about his waiver of his right to appeal or to collaterally challenge his conviction and sentence:

---

[2] 1 THE COURT: All right. Did you receive a copy
2 of your Indictment? Mr. Quintana is showing you, I
3 assume, what it is. It's been superseded, according to
4 Ms. Hampton.
5 DEFENDANT ZAMARANO: Yes.
6 THE COURT: He's showing you the Superseding
7 Indictment. Did he read it and explain it to you?
8 DEFENDANT ZAMARANO: Yes, sir.
9 THE COURT: Do you feel like you understand the
10 charges against you?
11 DEFENDANT ZAMARANO: Yes, sir.

D.E. 123 at 8. Although the indictment refers to Enrique Zamorano, Jr., some transcripts refer to him as "Zamarano." The Court has quoted extensively from the transcripts and has not altered the reporter's text.

17 THE COURT: Okay. I notice that in each
18 agreement, in paragraph 7, there is a waiver of
19 certain rights to appeal.
   \*  \*  \*  \*
24 THE COURT: Mr. Zamorano, were you aware that
25 the agreement contained this waiver of certain rights to
1 appeal?
2 DEFENDANT ZAMARANO: Yes, sir.
3 THE COURT: Were you aware that you not only
4 waived your right to directly appeal your conviction and
5 sentence, but also to collaterally attack it under a
6 federal statute known as 28 United States Code, Section
7 2255? . . . .
9 THE COURT: Were you aware of that,
10 Mr. Zamorano?
11 DEFENDANT ZAMARANO: Yes, sir.
   \*  \*  \*  \*
23 THE COURT: Mr. Zamorano, did you discuss this
24 waiver with your attorney before you signed this
25 agreement?
1 DEFENDANT ZAMARANO: Yes, sir.
2 THE COURT: Do you feel like you understand the
3 waiver and how it may affect your rights in this case?
4 DEFENDANT ZAMARANO: I'm not sure how it
5 affects my rights, sir, but I believe it is the best
6 thing for me.
7 THE COURT: Okay. Well, you have a very
8 valuable right. Anyone who is convicted of a crime in
9 this country, in this Criminal Justice System, can
10 appeal it under certain circumstances. You're waiving
11 certain rights to appeal to a higher court your
12 conviction and your sentence, and you understand you're
13 giving up that right, except under very limited
14 circumstances. In other words, if I sentence you above
15 the statutory maximum, you can appeal that; but other
16 than that, you waive certain rights to appeal.
17 Do you understand?
18 DEFENDANT ZAMARANO: Yes, sir.
19 THE COURT: Do you have any questions you want
20 to ask me about this waiver?
21 DEFENDANT ZAMARANO: Well, sir, I've asked
22 Christ for help. I've asked him to send me messages
23 through the Bible so that I can do whatever is best for
24 me, for my family in Mexico. I haven't seen them for
25 nine months, or my children. I've asked God what is the

> 1 best message, what is the best thing that I can do.
> 2 I do trust, although at first I did have a
> 3 disagreement with my attorney, Carlos. He now tells me
> 4 that this is the best that I can accept and the best
> 5 that can be offered to me. And I -- whatever you see
> 6 best, Your Honor, for me and for my family, whatever is
> 7 best, so be it.
> 8 THE COURT: Very well. The ultimate decision
> 9 whether you plead guilty or not is yours, but certainly
> 10 you should heed the advice of your attorney. He's
> 11 trained in the law and will try to do what is best for
> 12 you, but the final decision is yours to make.

Id. at 9-13.

The Court advised Zamorano of the punishment range of "not less than 10 years up to life in prison," a fine of not more than $4,000,000, at least 5 years supervised release, and a special assessment of $100. Id. at 14. The Court described supervised release and the sentencing process. Id. at 14-16. Zamorano testified he understood. Id. at 9. The Court further informed Zamorano of the various trial rights available to him; he testified that he understood those rights and understood that if he plead guilty he would be giving up those trial rights. Id. at 17-18.

The government provided a factual recitation regarding Count One. Id. at 23-31. Zamorano agreed with most of the government's recitation but denied he was anything more than a worker. Id. at 31. He then pled guilty. Id.

At the conclusion of rearraignment, the Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report (PSI). D.E. 92. The PSI calculated Zamorano's base offense level at 36 based upon 62.84 kilograms of cocaine and 76.65 kilograms of marijuana. D.E. 92 at ¶ 31. The base level was enhanced by 4 points for a leadership role pursuant to § 3B1.1 (a). Id. at ¶ 34. No credit was given for acceptance of responsibility. Id. at ¶¶ 37-40. Zamorano's total offense level was 40. He had no previous criminal history. Id. at ¶¶ 41-44. The resulting guideline range was a term

of imprisonment of 292 to 365 months with a statutory minimum sentence of 10 years. Id. at ¶¶ 58-59.

Sentencing was held in January 2012. D.E. 126. Zamorano testified that he had reviewed the PSI and discussed it with counsel. Id. at 4. The defense filed objections regarding leadership role. Id. Zamorano accepted responsibility for managing a portion of the operation and for recruiting drivers, but denied that he was an organizer/leader of a drug cartel. Id. at 7. Defense counsel advised the Court that Zamorano did not wish to hear the testimony of the government's witnesses on the issue and did not object to the four point enhancement so much as the potential label. Id. at 7-8. The Probation Officer agreed that Zamorano qualified for acceptance of responsibility. Id. at 9. Acceptance of responsibility changed Zamorano's offense level to 37 and reduced his guideline range to 210 to 262 months. Id. at 10. Zamorano attempted to qualify for safety valve, but the government opposed it on the ground that Zamorano was not completely truthful. Id. at 10.

During sentencing, counsel for Zamorano argued that Zamorano was forced into cooperating with the cartels to smuggle drugs into the United States, that he had been kidnapped and subjected to some torture, and that he did not participate in drug smuggling after 2005. Id. at 11. The government argued that Zamorano was a fugitive for two years and was not arrested until the United States persuaded the Mexican government to deport Zamorano. Id. at 13-14. The government also argued that Zamorano purchased small firearms that were taken to Mexico from 2006 to 2008. Id. at 14. Ultimately, the government recommended 210 months, the lowest-end guideline sentence, in accordance with the plea agreement. Id. at 15. The Court sentenced Zamorano to 210 months to be followed by five years supervised release, and a $100 special assessment. Id. at 17-18. The Court reminded Zamorano of the waiver of his appellate rights. Id. at 17.

Judgment was entered on January 25, 2012. D.E. 113. The Clerk received Zamorano's

motion to vacate on December 24, 2012. D.E. 115. It is timely.

### III. MOVANT'S ALLEGATIONS

Zamorano claims that his counsel was ineffective, but it is not completely clear from his memorandum of law in what respects he claims counsel's performance was deficient. D.E. 115 at 4 ("Ineffective Assistance of Counsel. See memorandum of facts attached."). It appears that Zamorano contends that counsel was ineffective because he did not provide Zamorano with copies of all documents in Spanish. D.E. 116 at 5. He further claims his plea was involuntary because counsel misinformed him and there was "a lack of correct and honest dealings by counsel." Id. He claims his responses at the plea hearing were a result of "gross misrepresentation by legal counsel and the government." Id. He further contends that "due to the ineptitude and sheer ignorance of counsel, regarding the instant matter, both counsel and the government withheld vital information and that both the government and counsel induced [him] to plead guilty by erroneously misleading movant during the plea process." Id. Zamorano admits that the plea colloquy will support his guilty plea but claims that "the judge told counsel to ensure he translated everything from English to Spanish because it was evident [Zamorano] was having problems understanding what was taking place." Id. at 6.

Zamorano also claims that counsel told him if he cooperated with the government, he would do 10 years not 30. He claims counsel refused to go to trial and told Zamorano that if he wanted to go to trial, he needed to hire a different attorney. Id. at 6-7. Zamorano claims that counsel never discussed the PSI with him, never explained the sentencing guidelines and how they work, never explained relevant conduct, and never discussed the plea agreement with him. Id. Zamorano alleges that the Court reprimanded counsel for failing to have Court documents translated into Spanish so Zamorano could understand what was taking place. Id. at 7, 8. Finally, Zamorano alleges the

7

government promised him a sentence reduction if Zamorano pled guilty and provided substantial assistance for the apprehension and conviction of another. The government then "determined the assistance provided did not warrant a sentence reduction." Id. at 9.

The government's response urges this Court to enforce Zamorano's waiver of his right to collaterally attack his sentence pursuant to 28 U.S.C. § 2255. D.E. 128 at 24. Alternatively, the government requests that the Court deny the motion on the grounds that it is without merit. Id. at 17.

## IV. DISCUSSION

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

### B. Ineffective Assistance of Counsel

An ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of

8

what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to some increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### C. Waiver of Right to File § 2255 Motion

Zamorano claims in part that his attorney provided ineffective assistance by failing to properly advise him of the likely sentencing range and how his sentence would be determined before encouraging him to plead guilty. The Court construes this claim as a challenge to the validity of Zamorano's guilty plea.

Zamorano waived his right to appeal or to file a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 as part of his plea agreement with the government. Zamorano's claims of ineffective assistance do not automatically relieve him of his waivers. United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (An ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea

itself.").[3] Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. United States v. Diaz, 733 F.2d 371, 373-74 (5th Cir. 1979). A defendant must show such a strong degree of misunderstanding, duress, or misrepresentation by others that his plea would become a constitutionally inadequate basis for imprisonment. Id. (citing Blackledge v. Allison, 431 U.S. 63, 75 (1977)).

The record of Zamorano's rearraignment confirms that he understood the charges against him, the rights he was waiving, and his maximum sentence. Rearraignment thus establishes that Zamorano was advised of the core issues to establish a voluntary plea. United States v. Gracia, 983 F.2d 625, 627–28 (5th Cir. 1993) ("When considering challenges to guilty plea proceedings, we have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea."). Compliance with the admonishments required under Rule 11 of the Federal Rules of Criminal Procedure provides "prophylactic protection for the constitutional rights involved in the entry of guilty pleas." See id. at 627.

Zamorano admits he was not coerced but claims that counsel did not explain his sentencing exposure. Zamorano was advised by the Court at rearraignment that his minimum sentence was 10 years and that he could be sentenced to life imprisonment. D.E. 123 at 14. Additionally, a year before he entered into the plea agreement, Zamorano was arraigned on Count One and advised that the range of punishment was at least ten years and up to life imprisonment. ERO, Jan. 3, 2011 at 3:13:45/3:14:16.

---

[3] In White, the Court decided there was "no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish. The Sixth Amendment right to effective assistance of counsel may also be waived, and thus need not be treated any differently." Id. at 343 (internal citations omitted).

Furthermore, Zamorano's plea agreement stated:

> 5. Neither the Government nor any law enforcement officer can or does make any promises or representations as to what sentence will be imposed by the Court.
> 6. The defendant is aware that the sentence will be determined with reference to the United States Sentencing Commission's *Guidelines Manual* (U.S.S.G.). *Defendant acknowledges and agrees that the Court on Count One may impose any sentence of not less than 10 years and up to and including Life Imprisonment*, which is the maximum term provided for a violation of 21 U.S.C. § 846, 841(a)(1) and 841(b)(1)(A) . . . and that the sentence to be imposed is within the sole discretion of the Court in accordance with the Sentencing reform Act of 1984, 18 USC § 3553(a)(1) and (2), and § 3661. If the Court should impose any sentence up to the maximum established by statute, defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.
>    \*       \*       \*       \*
> 8. Defendant is aware that a sentence has not yet been determined by the Court. *The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction not a promise*, and is not binding on the United States, the Probation Office of the Court. The defendant understands that the sentencing range is <u>advisory only</u>, therefore the Court may impose a sentence that is lower or higher than that range. The United States does not make any promise or representation about what sentence the defendant will receive.

D.E. 91 at ¶¶ 5, 6, 8 (emphasis added). Zamorano further testified that no one had made him any offer or promise to get him to plead guilty, other than those in the plea agreement. D.E. 123 at 10.

Finally, Zamorano testified that he understood his waiver of appeal and post-conviction challenge and had discussed these waivers with counsel before he signed the plea agreement. <u>Id.</u> at 10-11.

Zamorano's sworn statements in open court are entitled to a strong presumption of truthfulness. <u>United States v. Lampaziane</u>, 251 F.3d 519, 524 (5th Cir. 2001) (citing <u>Blackledge</u>, 431 U.S. at 74)). "Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea

11

colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Because Zamorano's plea and waiver were knowing and voluntary, he gave up the rights he now seeks to assert. The Court does not reach the merits of Zamorano's claims because they fall within the scope of his waiver. See United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing voluntary and knowing waiver of § 2255 rights).

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Zamorano has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A Certificate of Appealability (COA) "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84). As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial

of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Zamorano is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Zamorano's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 115) is **DENIED**, and he is also **DENIED** a Certificate of Appealability.

It is so **ORDERED.**

**SIGNED** on this 10th day of July, 2013.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE